*In re* ESTATE OF REYNOLDS.

REYNOLDS *v.* REYNOLDS.

1. WILLS—MENTAL COMPETENCY—EVIDENCE.
   Record *held,* insufficient to indicate mental incapacity to execute will by 71-year old testatrix who was good business woman, had a strong mind, determined will and handled her own affairs.

2. SAME—UNDUE INFLUENCE—NURSES.
   Restricting testatrix's practical nurse to her proper function in the household *held,* not evidence of undue influence.

3. SAME—EVIDENCE—SUSPICION.
   In will contest, various facts when put in their proper place as to time and events, reduced to their reasonable import and viewed in the light of the character of the testatrix, manner of making will and absence of testimony indicating domination *held,* insufficient to make issue of undue influence a question for jury although perhaps enough to raise suspicion in the suspicious or interested.

4. SAME—INFERENCES.
   Inference of undue influence *held,* not justified from testimony that upon her nurse's discovery of instructions to probate judge which had been mislaid by one of the beneficiaries, testatrix ordered instructions destroyed and then refused offer of beneficiaries to re-write them from memory.

5. SAME—VERDICTS AND FINDINGS—DIRECTED VERDICT.

Verdict for proponents in will contest *held*, not error, where verdict could have been directed in their favor.

6. SAME — SOURCE FROM WHICH TESTATRIX RECEIVED PROPERTY — FAIRNESS OF DISTRIBUTION.

Source from which testatrix received her property and fairness of her distribution of it *held*, not matters for consideration by jury in will contest, where she owed no legal or moral duty to provide for contestants, who were her nieces and nephews, and no plea of natural justice is involved.

7. SAME—FIDUCIARIES—PRESUMPTION OF UNDUE INFLUENCE.

Relations between testatrix, residuary legatee, and latter's stepmother with whom testatrix resided and who was also a legatee *held*, not of such a confidential nature as to raise presumption of undue influence and cast burden of proof of honesty of the will on them.

8. SAME—EVIDENCE—DECLARATIONS OF TESTATOR.

Declarations of a testator are not evidence of undue influence.

9. SAME—ACTS OF DOMINATION.

To establish undue influence of testator, there must be proof of acts of domination.

10. TRIAL—INSTRUCTIONS—CURING ERROR—WILLS—UNDUE INFLUENCE.

Instruction that undue influence, to vitiate a will, must amount to force and coercion, so as to destroy testatrix's free agency *and that circumstances of execution are inconsistent with any hypothesis but undue influence held*, cured of error where, before verdict was rendered, jury was called in, instructed to disregard the italicized portion and balance of instruction was re-read.

11. WILLS—REFERENCE TO EXTRANEOUS DOCUMENTS.

Ineffective references in wills to extraneous documents are regarded as surplusage, hence testatrix's reference to note of instructions disposing of part of estate which note was not sufficiently identified to make it a part of the will is disregarded where, without it, will is complete and disposes of all of her estate.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 14, 1935. (Docket No. 111, Calendar No. 38,409.) Decided October 11, 1935.

Jessie M. Reynolds and others presented the last will of Minnie E. C. Reynolds for probate. On objections of Frank P. Reynolds, Frank R. Chambers, Percy H. Chambers, Louise Hagle Farley, Florence Hagle Sleight and Paul K. Hagle. Judgment for proponents. Contestants appealed to circuit court. Verdict and judgment for proponents. Contestants appeal. Affirmed.

*Louis H. Osterhous,* for proponents.

*Henry C. L. Forler, Charles E. Misner* and *Frederick W. Bauer,* for contestants.

Fead, J. Proponents had verdict of a jury and judgment allowing the last will of Miss Minnie E. C. Reynolds.

Testatrix died November 23, 1933, aged 71 years, leaving a considerable estate, part of which she had received from her father 34 years before and part from her deceased brother 15 years before her death. She was one of seven children, all of whom predeceased her except a brother, Franklin, 83 years old, a druggist in Ontario, and a sister, Eliza, an invalid, whom testatrix had supported for many years and who survived testatrix about a week. She had five nephews and four nieces, widely scattered, of mature age, not dependent, with all of whom her relations were friendly but without particular intimacy, some of whom she had not seen for many years and with whom her correspondence consisted in the exchange of Christmas cards.

Testatrix was a good business woman, had a strong mind and determined will, and she handled her own affairs. She retained her vigor of mind and character after the will was executed and until her death became imminent. There was no indication or evidence of mental incapacity.

Testatrix lived in various cities, often at Grand Haven, Michigan. Part of her estate was in Canadian government bonds and bank stocks. She made three wills in Canada, the last in 1928, in which she left her whole estate in trust, the income payable to Eliza for her life and, at her death, her sister Laura (since deceased) to take $20,000, Jessie M. Reynolds, $10,000, and her other nieces and nephews and a grandnephew each to take $5,000, if they respectively survived Eliza. Testatrix knew there were heavy inheritance taxes in Canada on gifts to nephews and nieces and that any will she might make must be probated in Canada to pass the estate located therein.

In 1931, while living at Grand Haven, she executed a will, drafted by the probate judge and witnessed by the register of deeds and his deputy. The contents are not shown but, in a letter to a niece, testatrix assured her of an equal share. She went, with Eliza, to California and remained two years. While there, she notified her bank at Grand Haven to allow Frances P. Reynolds, stepmother of Jessie, access to her safety deposit box. In February, 1933, testatrix and Eliza returned to Grand Haven and took up their abode with Frances and Jessie. Eliza was ill and a practical nurse was engaged for her.

In June testatrix took a niece, Florence H. Sleight, to the Century of Progress at Chicago. Before going, she asked the probate judge, a woman, to draft her will, giving her a written memorandum of the terms. The will was drafted, executed by testatrix and witnessed by the register of deeds and his deputy. Its terms are not disclosed.

In the summer testatrix became ill. It developed that she had a cancer. She became confined to her room September 13th. September 30th, she changed

her bank accounts to joint accounts with Jessie, payable to either or the survivor. About October 1st she sent for the judge of probate, gave her a memorandum and asked her to draft a new will and requested her to get the same witnesses as before. The will was executed October 3d, with no one present in the room except testatrix and the witnesses, the register of deeds and his deputy.

The will gives a bond each to the brother Franklin, Frances P. Reynolds, a niece, a nephew, all the residue to Jessie M. Reynolds, with the proviso that she care for Eliza during her life, and then provides:

"It is my desire that my jewelry, household goods and clothing be distributed immediately upon my decease, according to a note left by me and attached to my will."

No note was attached to the will but on October 4th the will was deposited with the probate judge with a sealed envelope containing instructions, dated September 28th, for the disposition of some personal effects to nieces and a nephew.

After execution of the will, testatrix continued to handle her own affairs, signing checks on her bank account, paying bills and giving directions. Through letters to her local banker she had the Canadian securities transferred to Jessie, or in the process of transfer, perhaps to avoid inheritance taxes and probate proceedings.

Contestants charge both Frances and Jessie M. Reynolds with exercising undue influence upon testatrix, overcoming her strong mind and imposing their will upon her. Jessie taught school in Muskegon and was at home only during week-ends. She was absent when the will was executed. Frances

was 75 years old, hard of hearing, with poor eyesight, and in feeble physical condition, often compelled to spend all day in bed. After the bank accounts were changed to joint accounts with Jessie, testatrix continued to sign checks on them. Jessie signed none. Both she and Frances ran errands for testatrix, getting money for her on her checks, papers from the safety deposit box and delivering messages from her to the banker. The testimony shows no act of control by them over testatrix's property or affairs except at her specific direction.

Aside from the fact that testatrix lived with Frances and Jessie and the change of beneficiaries from previous wills, contestants' case rests upon the testimony of the practical nurse who said she was in attendance upon testatrix constantly except for about an hour a day. The nurse testified to alleged acts and statements of testatrix to her, while they were alone, such as that she cried a great deal, particularly after she had signed something, complained that she did not want a will as she had one, that she was signing papers of which she knew nothing, and all she wanted was papers necessary to enable Jessie to look after her property while she was alive. She further said testatrix told her everyone had to obey Jessie. The testimony was general, not particularly directed to the execution of the will.

Repeatedly pressed to state an act of domination of testatrix by Frances or Jessie, the best the nurse could do was to say that they had forbidden her (the nurse) to write relatives regarding testatrix's condition, had forbidden her to take the mail out of the mail box and had ordered her out of testatrix's room, when they came into it with pen, ink and paper. Also, she said that, on one occasion when Frances brought a form of assignment of bond for

testatrix to sign, she did not tell testatrix what it was and the witness hazarded the opinion that testatrix did not know what she was signing. The latter event occurred more than a month after the will was made. It is hardly evidence of undue influence to restrict a nurse to her proper function in the household.

Contestants list 16 facts which they contend raise an issue of undue influence. It is not necessary to discuss them. Put in their proper place as to time and events, reduced to their reasonable import and when viewed in the light of the character of testatrix, the manner of making the will and the absence of testimony indicating domination, they would do no more than raise suspicion in the suspicious, or interested.

The outstanding incident, claimed to indicate domination of testatrix, will illustrate the character of the nurse's testimony. Instructions for a will, prepared by someone, were given to Frances P. Reynolds to take to the court house. She mislaid them. The nurse found them and gave them to testatrix, who said she did not want them and ordered the nurse to destroy them. Frances or Jessie, or both, told testatrix they could re-write the instructions as she or they remembered them. From this it is argued that they had prepared the instructions and imposed them on testatrix. Any such inference fails, particularly as to domination of testatrix, because testatrix rejected the offer, obviously refused to trust Frances with new instructions because she merely requested her to send for the probate judge and, herself, delivered her directions, in her own handwriting and with corrections made in the judge's presence, to the judge and made her own request as to witnesses.

We think, as the circuit court did on consideration of motion for new trial, that verdict could have been directed for proponents. Aside from this, we find no reversible error.

The court properly instructed the jury that the source from which testatrix received property and the fairness of the distribution were not matters for consideration by it. Testatrix owed no legal or moral duty to provide for contestants and no plea of natural justice was involved. *In re Allen's Estate,* 230 Mich. 584.

The relations between testatrix and Frances and Jessie Reynolds were not of the confidential nature which raised a presumption of undue influence and cast the burden of proof of honesty of the will on them. *In re Lacroix's Estate,* 265 Mich. 59; *Lamb* v. *Lippincott,* 115 Mich. 611.

The rule is settled by a long line of authorities that declarations of a testator do not constitute evidence of undue influence. *In re Spinner's Estate,* 248 Mich. 263. There must be proof of acts of domination.

Contestants complain of the italicized words in the charge, defining undue influence:

"It amounts to force and coercion, destroying her free agency; the influence to vitiate a will, set aside a will, there must be proof that the will was obtained by this coercion, *and it must be shown that the circumstances of its execution are inconsistent with any hypothesis but undue influence.*"

The charge was in language approved in *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276). But the italicized words were condemned, as imposing too great a burden on contestants, in *Bush* v. *Delano,* 113 Mich. 321. They were omitted, in quoting from the *Maynard Case,* in *Re McIntyre's Estate,* 193

Mich. 257, 279, and in *Re Luders' Estate,* 238 Mich. 87, 93. But they were not deleted in *Re Petrie's Estate,* 251 Mich. 588, in so quoting.

The conflict was discovered before verdict, the court called in the jury and instructed it to disregard the italicized words and re-read the balance of the instruction, thereby curing the error.

In the *Petrie Case,* the conflict was not called to the attention of the court, decision was not based on the italicized words and their inclusion in the quotation from the *Maynard Case* is not to be taken as reverting to the obviously incorrect rule there stated.

Contestants urge that the will cannot be admitted to probate because it incorporates a note of instructions disposing of part of the estate, the note is not sufficiently identified to make it part of the will, and without it the will does not express the intention of testatrix as to disposition of her property.

We pass the point that the reference in the will is of ''desire,'' not a bequest. Without it the will is complete, disposing of all of the estate. It is testatrix's only last will. It is a sound rule that, in such case, ineffective references to extraneous documents are regarded as surplusage and do not affect testamentary dispositions of property made according to law. *In re Acres Will,* 128 Misc. Rep. 254 (219 N. Y. Supp. 313); *Handley* v. *Palmer,* 91 Fed. 948; *Bryan's Appeal,* 77 Conn. 240 (58 Atl. 748, 68 L. R. A. 353, 107 Am. St. Rep. 34, 1 Ann. Cas. 393).

Affirmed, with costs.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.