*In re* JOHNSON'S ESTATE.

ELDRED *v.* KNOWLTON.

1. WILLS—FRAUD—UNDUE INFLUENCE—EVIDENCE.

Fact that one of the proponents, a niece of testator's deceased wife, may have misled testator's niece, a contestant, as to nature of business of attorney who consulted with testator as to making of will in which proponent shared residue and contestant was made a specific devise of a house and lot, did not tend to establish that testator executed the will because of any fraud or undue influence exerted against him, inasmuch as contestant was not in a position to insist that she be consulted as to the provisions of the instrument.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MENTAL COMPETENCY OF TESTATOR.

Where contestants withdrew their claim of lack of mental competency on part of testator when proponents moved for directed verdict sustaining the will, fact that testator may have been grieving over his wife's death which had occurred four days prior to his execution of the will, and was not, therefore, in proper condition mentally to transact business, is not considered on appeal in view of such withdrawal and the fact that the issue is not embraced within the statement of issues involved in the appeal.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills, § 440.
[2] 3 Am Jur, Appeal and Error, §§ 820, 821.
[3] 57 Am Jur, Wills, §§ 388, 445, 446.
[4, 5, 12] 57 Am Jur, Wills, § 386.
[6] 3 Am Jur, Appeal and Error, § 945.
[8] 57 Am Jur, Wills, §§ 445, 446.
[9] 57 Am Jur, Wills, §§ 387, 438.
[12] Presumption and burden of proof as to undue influence on testator. 66 ALR 254; 154 ALR 593.
[12] 57 Am Jur, Wills, § 386.
[13, 15] 57 Am Jur, Wills, § 350.
[14] 57 Am Jur, Wills, § 361.
[16] 57 Am Jur, Wills, § 453.

3. WILLS—FRAUD—UNDUE INFLUENCE—EVIDENCE.

Where testator's wife had predeceased him and left all of her property to him, the fact that he left the residue of his property to proponents, her niece and nephew, and did not leave all of his property to contestants, his own niece and nephew, did not give rise to an inference of fraud or undue influence under record presented, especially where it appears that over the years a close relationship had developed between proponents and testator and his wife and there had been little contact with contestants.

4. SAME—FRAUD—UNDUE INFLUENCE—BURDEN OF PROOF.

In order to defeat the admission of a will to probate on the ground of fraud or undue influence, the burden of proof rests on contestants to establish by satisfactory proof the existence of fraud or undue influence of such character as to vitiate the instrument.

5. SAME—FRAUD—UNDUE INFLUENCE—EVIDENCE.

In will contest which has been certified to circuit court for jury trial and will is attacked on grounds of fraud and undue influence, it was incumbent upon contestants to offer proofs from which legitimate inferences of fraud or undue influence, or both, might properly be drawn.

6. SAME—DIRECTED VERDICT—EVIDENCE.

Where verdict has been directed for proponents in will contest and contestants have appealed, the evidence must be construed in the light most favorable to contestants.

7. SAME—CHILDLESS WIDOWER—FRAUD—UNDUE INFLUENCE—PRESUMPTIONS.

A childless widower is not under a duty to leave all of his property to his relatives and his failure to do so does not create any presumption that the will was the result of fraud or undue influence.

8. SAME—UNDUE INFLUENCE—EVIDENCE.

Undue influence upon testator, a childless widower, *held,* not shown to have been exerted against him by proponents by reason of evidence that the attitude of testator's late wife toward contestants was not of a cordial nature or that testator had made statements that he intended to leave his niece, one of the contestants, sufficient property for her care and support, such latter evidence not being competent evidence of undue influence.

9. SAME—UNDUE INFLUENCE—OPPORTUNITY—INFERENCE.

Opportunity alone does not raise an inference that undue influence has been exerted.

10. SAME—UNDUE INFLUENCE.

Undue influence will vitiate a will only when it is sufficient to overcome the free agency of the testator so that the will which results from his intelligent action speaks not the will of the testator himself, but of someone else.

11. SAME—UNDUE INFLUENCE.

Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion.

12. SAME—UNDUE INFLUENCE—EVIDENCE—PRESUMPTIONS.

Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things.

13. SAME—UNDUE INFLUENCE.

A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property.

14. SAME—UNDUE INFLUENCE—ADVICE—ARGUMENTS—PERSUASION.

Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion.

15. SAME—UNDUE INFLUENCE—FRAUD.

Undue influence upon a testator is a species of fraud and, like fraud, must remain undefined by the courts.

16. SAME—UNDUE INFLUENCE—FRAUD.

Evidence in will contest failed to disclose proof from which an inference may properly be drawn that testator was subjected to undue influence or fraud in the making of will whereby contestants, his own niece and nephew, were each left a house and lot and residue was left to proponents, his late wife's niece and nephew; hence, verdict sustaining the will was properly directed.

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 12, 1949. (Docket No. 67, Calendar No. 44,565.) Decided December 7, 1949.

In the matter of the estate of Ray R. Johnson, deceased. Giles A. Eldred and another presented the will of Ray R. Johnson, deceased, for probate. Elizabeth Knowlton and another objected thereto. Contest certified to circuit court. Directed verdict and judgment for proponents. Contestants appeal. Affirmed.

*Leo W. Hoffman,* for proponents.

*Harry Pell,* for contestants.

CARR, J. This case involves the validity of the last will and testament of Ray R. Johnson, a resident of Plainwell, Allegan county. The testator died August 4, 1948. The instrument in question, which was executed on May 25, 1948, was prepared by Ervin T. Hinga, an attorney practicing at Plainwell. No questions are raised as to the form and manner of execution. After a bequest in the sum of $1,000 to a friend, testator devised to contestant Elizabeth Knowlton, his niece, a house and lot in Plainwell. A like provision was made for the other contestant, a nephew of testator. The residuary clause gave the remainder of the estate, both real and personal, to the proponents, Giles A. Eldred and Mary E. Chadwick, nephew and niece, respectively, of testator's deceased wife.

Objections to the allowance of the will were filed in probate court by contestants, alleging that Mr. Johnson was mentally incompetent to execute a will at the time he undertook to do so, and also that the instrument was the result of fraud and undue influence. The objections asserted a conspiracy on the

part of certain persons, presumably the proponents, to obtain a portion of the estate of the deceased. Thereupon the issue was certified to the circuit court for trial, where it was brought on for hearing before a jury.

At the conclusion of contestants' proofs, counsel for proponents moved for a directed verdict sustaining the will. A colloquy between court and counsel at the time, as set forth in the record, indicates that contestants withdrew their claim of lack of mental competency but insisted that there was sufficient evidence to require submission to the jury of the questions of fraud and undue influence. The trial court granted the motion. Verdict and judgment were entered accordingly, and contestants have appealed. In their brief they state the question involved as follows:

"Was there sufficient evidence in the record viewed in a light most favorable to the contestants to warrant submitting the issue of fraud or undue influence to the jury?"

Proponents accept such statement as correct.

Testator left no direct descendants surviving him. The record indicates that for a number of years he and his wife had operated a mortuary home in Plainwell and had accumulated some property, the exact extent and value of which is not shown. Mrs. Johnson died, following a lingering illness, on May 21, 1948, 4 days before the execution of the will. On the 24th of May, Mr. Johnson contacted the attorney, Mr. Hinga, and discussed with him at some length the sale of the funeral home and also the making of a will. It appears from the testimony of Mr. Hinga that Mrs. Chadwick was present at a part, or perhaps all, of this conversation, in the course of which Mr. Johnson indicated that he wanted a will prepared for him, and specified with par-

ticularity the terms and conditions thereof. There is nothing in the testimony indicating that Mrs. Chadwick undertook to influence the testator in any way, or that she even made any suggestions concerning the matter. The attorney prepared the instrument the following day and took it to testator's home for execution. His wife accompanied him for the purpose of acting as a witness to the execution of the will. On this occasion some further conversation took place between Mr. Johnson and Mr. Hinga, in the presence of Mrs. Chadwick, with reference to the sale of the funeral home. Following such discussion Mrs. Chadwick left the room, and Mr. Hinga proceeded to read the will that he had drafted. Mr. Johnson expressed his approval, signed it, and Mr. and Mrs. Hinga signed as witnesses.

At the time of the execution of the will Elizabeth Knowlton, one of the contestants, was in the home, but according to her testimony she did not know the nature of the transaction for which the attorney was present. She testified in substance that Mrs. Chadwick stated to her that the matter had reference to Mrs. Johnson's affairs. Such remark is emphasized as supporting the claim of fraud and undue influence because Mrs. Knowlton was not informed that a will was being prepared, but was, so it is claimed, intentionally misled. Obviously contestants were not entitled to be advised that their uncle was preparing a will. Had Mrs. Knowlton been informed that such was the fact, she was scarcely in position to insist that she be consulted with reference to the provisions of the instrument. Conceding that she ought not to have been given deliberately an erroneous impression of the nature of the business being transacted, such fact does not tend to establish that Mr. Johnson executed the will because of any fraud or undue influence exerted against him.

Contestants further claim that at the time of the execution of the will Mr. Johnson was grieving over the death of his wife, and was not in proper condition mentally to transact business. As before stated, however, the claim of mental incompetency was withdrawn on the trial in the circuit court and is not embraced within the statement of the issues involved in this appeal. It is possible, as contestants imply by their argument, that he had in mind making such a disposition of his property as would have met the approval of Mrs. Johnson had she been still living. It should be noted in this connection that in his conversation with the attorney testator stated that Mrs. Johnson had by will left all her property to him. Quite possibly he was influenced thereby to make provision for her nephew and niece. Be that as it may, there is nothing in the record on which to base an inference of fraud or undue influence because of the fact that he did not leave all of his property to contestants. The following excerpt from the testimony of Mr. Hinga indicates testator's reasons for the principal provisions in his will:

"I asked him who his heirs at law were and he stated Mrs. Knowlton and Mr. Barrett, and he stated that he desired to have the remainder of his estate go to Mrs. Chadwick and Mr. Eldred. And he said that Mrs. Knowlton and Mr. Barrett were his heirs, but that they had had little contact with him over the long period of time and that a close relationship had developed on the part of his wife, between his wife and himself and Mr. Eldred and Mrs. Chadwick and that they had visited from time to time and that they felt very close. And he said it was particularly his wife's desire that they recognize the close relationship and that in disposing of his property that he felt that should be taken into account."

In order to defeat the admission of the will to probate, the burden rested on contestants to establish by satisfactory proof the existence of fraud or undue influence of such character as to vitiate the instrument. *In re Hannan's Estate,* 315 Mich 102; *In re Kramer's Estate,* 324 Mich 626. In order to be entitled to have the issues, or either of them, submitted to the jury for determination, it was incumbent on them to offer proofs from which legitimate inferences of fraud or undue influence, or both, might properly be drawn. In considering such question the testimony must of course be construed in the light most favorable to contestants. *In re Hoffman's Estate,* 300 Mich 406. As before noted, it was not the duty of testator to leave all of his property to his relatives; and his failure to do so does not create any presumption that the will was the result of fraud or undue influence. *In re Lacroix's Estate,* 265 Mich 59, 65; *In re Kramer's Estate, supra.* It does not appear that there was any confidential relationship between testator and either of the proponents. It is a fair inference that they had been on friendly terms for many years, but there is no showing that either habitually counseled and advised with him in connection with his business transactions, or that he sought their advice. See *In re Estate of Reynolds,* 273 Mich 71.

Contestants call attention to testimony indicating that the relations existing between them and Mrs. Johnson were not of a cordial nature. It does not appear, however, that she at any time indicated hostility to them or that her attitude materially affected the testator. Contestants claim that the latter was friendly to them, and appeared to hold them, especially Mrs. Knowlton, in affectionate regard. No legitimate inference of undue influence may be drawn from the proofs relating to the attitude of Mrs. Johnson toward contestants.

It is also claimed that at different times Mr. Johnson made statements indicating an intention on his part to give to Mrs. Knowlton sufficient property for her care and support. The testimony relates principally to such statements made after the execution of the will. Doubtless Mr. Johnson intended to make some provision for his niece, but the statements made by him indicating such purpose do not justify an inference that any fraud or undue influence was exerted against him in the making of the will in question. As before noted, the will devised to her a house and lot. The remarks of Mr. Johnson merely suggested his state of mind at the time they were made, and were not competent evidence to show undue influence. *In re Spinner's Estate,* 248 Mich 263; *In re Estate of Reynolds, supra.*

It has been repeatedly declared by this Court in prior decisions that opportunity alone does not raise an inference that undue influence had been exerted. *In re Williams' Estate,* 185 Mich 97, 118; *In re Hayes' Estate,* 255 Mich 338; *In re Hoffman's Estate, supra.* In discussing the nature of influence properly to be regarded as "undue" and, as such, sufficient to vitiate a will, this Court in the case of *In re Reed's Estate,* 273 Mich 334, 341, 344, said in part:

"Undue influence will vitiate a will only when it is sufficient to overcome the free agency of the testator so that the will which results from his intelligent action speaks not the will of the testator himself, but of someone else. Property owned and possessed by any person of full age and of sound mind and memory may be disposed of by them as they see fit.
* * *

"Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be

proved and in connection with the will and not with other things. A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases. *Maynard* v. *Vinton,* 59 Mich 139 (60 Am Rep 276).

"In *Sullivan* v. *Foley,* 112 Mich 1, the Court approved instructions to a jury that the testator was at liberty to select in his own discretion the objects of his bounty; he was in a better condition than anyone else to know what disposition ought to be made of his property; the jury was not to determine whether the will itself was a proper and suitable one, and the view of the jury upon that subject must not be allowed to influence in the least their verdict; if testator was mentally competent to make his will, he had an undoubted legal right to make it; undue influence, in order to defeat a will, must amount to force or coercion, and any influence short of this would not be undue influence; undue influence cannot be presumed; a will may not be set aside for undue influence unless such influence amounted to constraint too great for the testator to resist, depriving him of free agency; neither advice, nor argument, nor persuasion will vitiate a will freely made, even though the will might not have been made but for such advice or persuasion; persuasion and appeals to the affection, ties of kindred, sentiments of gratitude, or pity for future destitution do not constitute undue influence; no presumption of undue influence

arises from the fact that testator gave his property elsewhere than to his brother and sister; the fact that the person alleged to have used undue influence had ample opportunity therefor is no evidence such opportunity was exercised."

An analysis of the testimony in the instant case fails to disclose proof from which an inference may properly be drawn that testator was subjected to undue influence or fraud in the making of the will in controversy. On the contrary it appears that he directed the preparation of the instrument in accordance with his own wishes, based on his conclusion as to the provision that should be made for each beneficiary. The trial court did not err in directing a verdict sustaining the will. The judgment is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.