*In re* SPILLETTE ESTATE.

SBORDON *v.* HUNT.

1. APPEAL AND ERROR — JUDGMENT NOTWITHSTANDING VERDICT — WILLS—EVIDENCE.

The evidence is viewed in the light most favorable to contestant on her appeal from judgment for proponents notwithstanding verdict on issues of fraud and undue influence.

2. SAME—JUDGMENT NOTWITHSTANDING VERDICT—WILLS—FRAUD— UNDUE INFLUENCE—EVIDENCE.

Testimony concerning relationships and statements indicating why childless testatrix would have wished to leave her property to proponents, not related to her, and not to contestant, a niece, or other relatives is disregarded on contestant's appeal from judgment notwithstanding verdict on issues of fraud and undue influence.

3. WILLS—UNDUE INFLUENCE—SUSPICION.

The will of a person found to be possessed of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence as the expressed intentions of the testator should not be thwarted without clear reason therefor.

4. SAME—UNDUE INFLUENCE—OPPORTUNITY.

Mere opportunity does not suffice to establish that undue influence was exercised upon testator.

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 886.
[3] 57 Am Jur, Wills § 435.
[4] 57 Am Jur, Wills § 438.
[5] 57 Am Jur, Wills § 350.
[5, 6, 8] 57 Am Jur, Wills § 351.
[7] 57 Am Jur, Wills § 352.
[9] 57 Am Jur, Wills §§ 386, 401.

5. SAME—UNDUE INFLUENCE.

Influence, to be classed as undue, must place a testator in such a position that his free agency is destroyed, so that the will which results from his intelligent action speaks not the will of the testator himself but of someone else.

6. SAME—ADVICE—PERSUASION.

Neither advice, arguments or persuasion will vitiate a will made freely from conviction even though such will might not have been made but for such advice or persuasion.

7. SAME—UNDUE INFLUENCE—FRAUD.

Undue influence is a species of fraud and to prevent the probate of a will on the ground of defendant's fraud, it must be shown that defendant misrepresented material facts upon which testator relied and was influenced thereby in disposing of his property.

8. SAME—INFLUENCE.

Influence to induce testamentary disposition of property may be specific and direct without becoming undue although such will would not have been made but for such influence, so long as the testator's choice is his own and not that of another.

9. SAME—NONRELATIVES AS SOLE BENEFICIARIES—UNDUE INFLUENCE —FRAUD—EVIDENCE.

Trial court correctly entered judgment *non obstante veredicto* to uphold will, where there was no evidence to go to the jury on the question of fraud or undue influence, the evidence presented having shown she desired to make a will, executed disputed will while very ill some 7 days before she died and that the will as made, leaving proponents, who were not related to her, the sole beneficiaries, was not shown to have been even suggested by proponents or anyone else or to have been the result of their influencing her to make such provision.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 10, 1957. (Docket No. 39, Calendar No. 47,306.) Decided March 7, 1958.

In the estate of Florence Spillette, deceased, Ernestine Schaible Sbordon contested the admission of the will offered by the proponents, Archie Hunt and Helen Hunt. Will admitted in probate court. Judgment *non obstante veredicto* in the circuit court admitting will to probate. Plaintiffs appeal. Affirmed.

*Maiullo & Maiullo (Joseph A. Maiullo,* of counsel), for plaintiff.

*Clarence T. Wilson (C. Thomas Wilson* and *August F. Brandt,* of counsel), for defendants.

Dethmers, C. J. This is a will contest. An order entered in probate court admitting the will to probate. Upon appeal to circuit court a jury found for plaintiff, the contestant, but the court entered a judgment *non obstante veredicto* for defendants, who are the proponents. Plaintiff appeals here.

In the court below plaintiff did not urge mental incompetence on the part of testatrix, nor does she here. The sole question is whether there was sufficient evidence of fraud and undue influence to go to a jury. In determining this, we view the evidence in the light most favorable to plaintiff. *In re Niemschack's Estate,* 244 Mich 469; *In re Hoffman's Estate,* 300 Mich 406. Accordingly, we disregard testimony concerning relationships and statements indicating why testatrix would have wished to leave her property to defendants and not to plaintiff or other relatives.

The evidence shows that defendants, who were named sole beneficiaries under the will, were not relatives of testatrix; that she died without issue, but was survived by plaintiff, who was a niece, and grandnephews and grandnieces who are excluded by express language of the will; that 11 days before her death defendants took her to a convalescent home without notifying plaintiff, with whom they were acquainted; that 3 days later testatrix was admitted to a general hospital as a medical patient; that on the next day, 7 days before her death, she executed the will while in a hospital bed. A nurses' aide and a patient who had occupied a bed near that of testatrix appeared as witnesses for plaintiff and,

between them, testified, in substance, as follows: that testatrix was very sick and often spoke in a mumble, although at times clearly; that on the occasion when she executed the will defendants were present, together with the attorney who drafted and witnessed it and the woman who operated the above-mentioned convalescent home and who also witnessed the will; that defendant Archie Hunt kissed testatrix several times; that he told her, "This is your attorney," and she replied, "I have no attorney;" that they then told her that here was a will for her to sign, that they explained it to her, the attorney read portions of it to her and said that under its terms her money would go to defendants; that she then said that she did not want to give her money away, or did not want to give it away yet, and repeated this statement on a later occasion; that defendant Archie Hunt and the attorney then explained that she would not be giving her money away now, but would only be leaving it by will to defendants, if anything happened to her; that the attorney asked her if she had any relatives and testatrix mumbled something like "Saline" and defendant Archie Hunt stated that she once had had a niece that lived next door, but she had died; that the attorney then inquired as to the relationship between testatrix and defendant Archie Hunt and the latter stated that there was none but that he was her guardian, whereupon she stated, "I have no guardian;" that the attorney volunteered the information that, if she did not wish to leave her property to defendants, there were charitable organizations to which she could leave it, whereupon she again stated that she did not want to give her money away; that when she expressed the desire to wait a few days before signing the will, the attorney stated that his affairs would not permit him to come back during the next 2 days; that defendant Archie

Hunt then said, "She will sign;" that the attorney asked testatrix if she could read and that she replied that she did not have her glasses and could not see; that testatrix asked for her glasses and they were furnished to her; that the attorney also read portions, but not all, of the will to testatrix; that the attorney asked her if she understood the will and if he had left out anything that she wanted put in the will, but that testatrix's answer to the latter question was so faint that the patient in the nearby bed could not hear it; that, although the latter did not watch all the time to see whether she did so, she did not think testatrix was strong enough to read the papers; that the attorney stated that the testatrix could sign with an "X" but defendant Archie Hunt said that he would rather have her sign her name; that she did sign the will leaving her property to defendants and several times after that said, "After I'm gone I won't need it." Plaintiff's husband testified that on the day following execution of the will plaintiff asked testatrix if she knew what she had signed and testatrix answered, "No," but added, "You haven't anything to worry about. You'll be taken care of." Plaintiff's brief mentions, as the proofs show, that 2 days before execution of the will and while testatrix was still in the convalescent home, the mentioned attorney conferred privately with her. Thereafter, but before going to the hospital, testatrix asked the woman who operated the convalescent home to be one of the witnesses to her will and the witness testified that, in consequence, she went to the hospital and witnessed the will at the request of testatrix. A friend of testatrix testified that on several occasions before going to the convalescent home testatrix had expressed a desire to be taken to a lawyer for the purpose of making a will.

In *In re Williams' Estate,* 185 Mich 97, 121, this Court said:

"Mere suspicion is not sufficient, as was said by the supreme court of the United States in *Beyer* v. *LeFevre,* 186 US 114, 126 (22 S Ct 765, 46 L ed 1080):

" 'The will of a person found to be possessed of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence. The expressed intentions of the testator should not be thwarted without clear reason therefor.' "

In *In re Jennings' Estate,* 335 Mich 241, 247, 248, we said:

"The question of what constitutes undue influence has been considered by this Court on numerous occasions. Attention is directed to such cases as *In re Grow's Estate,* 299 Mich 133; *In re Hoffman's Estate,* 300 Mich 406; *In re Hannan's Estate,* 315 Mich 102; *In re Kramer's Estate,* 324 Mich 626; *In re Johnson's Estate,* 326 Mich 310. No purpose would be served by lengthy quotations therefrom, but they may be read with profit in this connection. They hold in substance that mere opportunity, as in the instant case, does not suffice to establish undue influence; that influence, to be classified as undue, must place a testator in such a position that his free agency is destroyed, so that the will which results from his intelligent action speaks not the will of the testator himself but of someone else; that neither advice, arguments or persuasion will vitiate a will made freely from conviction even though such will might not have been made but for such advice or persuasion; that undue influence is a species of fraud and that to prevent probate of a will on the grounds of defendant's fraud it must be shown that defendant misrepresented material facts and that testator relied upon and was influenced thereby in disposing of his property; that influences to induce testamentary disposition may be specific and direct without becoming undue as it is not improper to advise, persuade, solicit, importune, en-

treat, implore, move hopes, fears, or prejudices or to make appeals to vanity, pride, sense of justice, obligations of duty, ties of friendship, affection, or kindred, sentiment of gratitude or to pity for distress and destitution, although such will would not have been made but for such influence, so long as the testator's choice is his own and not that of another; that influence, to avoid a will, must be such as prevented testator from doing as he pleased with his property."

While there is testimony that testatrix said that she did not want to give her money away, there is no proof that testatrix did not wish to make and leave a last will and testament. The only evidence on this subject is that she did wish to do so. There is no proof or evidence from which a reasonable inference may be drawn that the provisions of the will, or any one of them, were not expressive of her free will but that of someone else, or resulted from undue influence or misrepresentation of material facts by which she was influenced so that her free agency was destroyed and her independent will overcome. There is not a shred of evidence to show, or from which it may reasonably be inferred, that any provision of the will was even suggested by defendants or anyone else to the testatrix or resulted from their influencing her to make such provision. It follows that there was no evidence to go to the jury on the question of fraud or undue influence and that the trial court correctly caused judgment *non obstante veredicto* to be entered for defendants.

Affirmed, with costs to defendants.

Carr, Kelly, Smith, Black, Edwards, and Voelker, JJ., concurred.

Kavanagh, J., took no part in the decision of this case.