(No. 20029.—

JAMES CUNNINGHAM *et al.* Plaintiffs in Error, *vs.* MATTIE HALLYBURTON *et al.* Defendants in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 6, 1931.*

HALL & DUSHER, LARGE & RENO, and LATHROP, LA-THROP, BROWN & LATHROP, for plaintiffs in error.

NORTH, LINSCOTT, GIBBONEY, NORTH & DIXON, for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

James Cunningham, Sarah Farrar, Carrie Mandeville Corey and Eugene W. Mandeville, heirs-at-law of Jennie E. Cunningham, deceased, filed a bill in the circuit court of Winnebago county against Mattie Hallyburton, Charles Mandeville, Louise Gibson and James G. Tetlow, administrator with the will annexed of the estate of Jennie E. Cunningham, deceased, to contest an instrument theretofore admitted to record by the probate court of the same county as the decedent's last will and testament. A jury found that the instrument was the decedent's last will and a decree in accordance with the verdict was rendered. The contestants prosecute this writ of error to review the record.

Jennie E. Cunningham was a spinster, seventy-four years of age, and resided on a farm at Corey's Bluff, in Winnebago county, south of the city of Rockford. Her mother, who had lived with her, died in May, 1926, at the age of one hundred four years. About the first of August of the same year, the daughter became seriously ill and Margaret Finn, a nurse, was employed to attend her. Miss Cunningham

occasionally expressed, in the presence of the nurse, the wish that she had arranged for the disposition of her estate. On the morning of August 16, at about seven o'clock, she suffered a severe and prolonged chill. Her attending physician was called and arrived about 8:30 o'clock. He prescribed a remedy and remained half an hour. The nurse also attempted to communicate with Miss Cunningham's attorney, but he did not receive the message until several hours later. About nine o'clock Miss Cunningham told the nurse that she could die in peace if her property were to go to Louise Gibson, a cousin, who resided in the city of Rockford, and she instructed the nurse to reduce her purpose to writing. Mrs. Finn suggested that a witness would be required and she called Martha Sowards, the tenant's wife, who was then in the kitchen. Mrs. Sowards said she believed two witnesses were necessary and she called her husband, Charles Sowards, the tenant of the farm. A pen, ink and paper were brought to Miss Cunningham's room and she requested the nurse to write: "I want Louise to have the home and all that is in it." The nurse complied with the request and the three persons then signed their names below the foregoing statement, as follows: "Mrs. Margaret Finn," "Martha Sowards" and 'Charls Sowards." After these signatures had been affixed, the nurse raised Miss Cunningham on her left elbow, gave her the pen and she made a cross beneath the last signature. The physician returned shortly before noon, but Miss Cunningham had become unconscious and so remained until she died a few minutes after eleven o'clock that night.

The name of Jennie E. Cunningham does not appear in the body of the instrument, nor in connection with the mark below the signatures of the witnesses, and the plaintiffs in error therefore contend that the instrument is not a will in writing as required by the statute. Section 2 of the act in regard to wills (Cahill's Stat. 1929, p. 2577; Smith's Stat. 1929, p. 2906) provides that "All wills, testaments and codi-

cils, by which any lands, tenements, hereditaments, annuities, rents or goods and chattels are devised, shall be reduced to writing, and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses, two of whom, declaring on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will, testament or codicil, to admit the same to record." * * * The provisions of the statute are mandatory (*Landry* v. *Morris,* 325 Ill. 201; *Hill* v. *Kehr,* 228 id. 204). To execute a will, however, no particular form is required (*Noble* v. *Tipton,* 219 Ill. 182; *Gump* v. *Gowans,* 226 id. 635). Neither a formal attestation clause nor even words in addition to the signatures of the witnesses are necessary (*Calkins* v. *Calkins,* 216 Ill. 458), and if the instrument bears no date, the time of its execution may be shown by extrinsic evidence. 1 Redfield on Wills, (4th ed.) *p. 508; 1 Page on Wills, (2d ed.) sec. 236.

The statute, 1 Vict. chap. 26, sec. 9, (77 Stat. at Large, Great Britain and Ireland, p. 83), provided that "no will shall be valid unless it shall be in writing and * * * signed at the foot or end thereof by the testator, or by some other person in his presence and by his directions; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." The case, *In the goods of Eleanor Bryce, deceased,* 2 Curteis's Eccl. Rep. 325, arose under this statute. The testatrix signed by a mark

in the presence of witnesses, who attested the execution of the instrument, but the name of the testatrix did not appear upon its face. The instrument was identified as the will of the decedent and it was held that there was a sufficient compliance with the statute. Another case under the same statute and in the same jurisdiction, *In the goods of James Clark, deceased,* 2 Curteis's Eccl. Rep. 329, led to a similar result. The testator was too ill to sign his will and he requested the scrivener to do so for him. In complying with the request, the scrivener signed the will in his own name thus: "Signed on behalf of the testator, in his presence, and by his direction, by me. C. F. Furlong, Vicar of Wakefield, Berks." The court held that the statute did not require the signature to a will to be in the testator's name, but allowed another person to sign it for him, and hence that the manner in which the particular will had been executed sufficiently complied with the statute. While both of these wills made disposition of personalty only, yet the statute under which their validity was adjudged applied to real and personal property alike; and it will be observed that, with respect to the signing of a will, the provisions of the English statute and of section 2 of our Wills act are substantially the same. Likewise, in *Bailey's Heirs* v. *Bailey's Executor,* 35 Ala. 687, where the scrivener wrote a name other than that of the testator in the body of his will and opposite his mark, the execution of the instrument was nevertheless held to be a sufficient compliance with a similar statute. Where the requirement of the statute is that the will shall be signed by the testator or by some other person in his presence and by his direction, it is not required that the will shall be signed in the name of the testator. Under such a statute, the testator may sign his will by his mark and it is not necessary that his name be attached to the mark which he makes or adopts as his signature. The testator's mark is effectual as his signature even though his name and the words "his mark" or their equivalent are

not attached to the mark. Such a designation may be useful as a contemporaneous declaration of the purpose of the mark, but it is not of the essence of the execution of the will. (*Jackson* v. *Jackson,* 39 N. Y. 153; *Bailey* v. *Bailey,* 35 Ala. 687; *In re Guilfoyle,* 96 Cal. 598; *Scott* v. *Hawk,* 107 Iowa, 723; *Thompson* v. *Thompson,* 49 Neb. 157; *Pool* v. *Buffum,* 3 Ore. 438.) In this State, it is not necessary that a testator personally sign his will (*Thornton* v. *Herndon,* 314 Ill. 360; *Elston* v. *Montgomery,* 242 id. 348), and his signature by mark is as effective as when he signs his name (*Robinson* v. *Brewster,* 140 Ill. 649). If the instrument in question is otherwise valid, it is not void because the name of the testatrix does not appear upon its face.

The plaintiffs in error further contend that the instrument in question does not disclose that it is of a testamentary character and that parol evidence is not admissible to show that Jennie E. Cunningham intended it as a testamentary disposition of her property. To sustain this contention, the plaintiffs in error cite *Young* v. *Wark,* 76 Miss. 829, 25 So. 660, and *Smith* v. *Smith,* 112 Va. 205, 70 S. E. 491. In the first case an instrument was found after its author's death which read: "Want Sarah relatives have all property. S. A. M. Saddler," and in the second case, the words "Every thing is Lous," constituted the body of the writing. No evidence was offered in either case to show that the writer intended the instrument as a disposition of his property, effective upon his death, and accordingly neither was admitted as a will. The court in each case, however, stated that the circumstances surrounding the execution of the instrument might be considered in determining whether it was intended as a testamentary disposition of property. Obviously, the words, "I want Louise to have the home and all that is in it," which constitute the body of the instrument under review, are susceptible of the construction that Jennie E. Cunningham intended either a present gift or a testamentary disposition of her property.

Testimony that the nurse was asked to write the instrument as a will; that the witnesses were requested to attest it by their signatures as such and that it was executed by Jennie E. Cunningham on the day of her death and in contemplation of that event was admitted without objection. When the instrument and that testimony are considered, it is clear that a testamentary disposition, and not a present gift, of the property was intended. Moreover, the testimony of the three attesting witnesses that they, in the presence of Jennie E. Cunningham, signed their names to the instrument as witnesses to her last will; that they saw her affix her mark thereto in their presence, and that they believed her to be of sound mind and memory at the time she so affixed her mark, was expressly made competent by section 2 of the Wills act.

The third contention made by the plaintiffs in error is that the cross made below the signatures of the witnesses was a fabrication and an alteration of the instrument. The nurse, the tenant and the latter's wife testified that they saw Jennie E. Cunningham make the cross with the pen given her by the nurse. Two experts on handwriting and a banker who had made an extensive study of the subject testified and the original instrument and enlarged photographs, both of the writing and of parts of it, have been certified to this court for inspection. The cross is finer than the letters in the body of the instrument and ends in trailing lines. One of the handwriting experts was called by the plaintiffs in error and he testified that, in his opinion, the lines of the cross indicated strength; that the trailing or fugitive lines were made with design and that there might be graphite in the lines of the cross. The other handwriting expert and the banker were called by the defendants in error. They testified that, in their opinion, the lines of the cross were made by a feeble or unsteady hand and no attempt to simulate weakness could be discerned in them; that the cross indicated nothing inconsistent with its hav-

ing been made by an aged woman in a weakened physical condition, and that the trailing lines showed that the person who made the cross was too weak to lift the pen from the paper. Neither handwriting expert called by the defendants in error discovered the presence of graphite in the cross. The evidence refutes the contention that the cross was not genuine.

The final contention is that the evidence fails to show that Jennie E. Cunningham was mentally competent to execute the instrument in question. The plaintiffs in error called two witnesses to testify upon the subject. One visited Miss Cunningham's home, to the best of her recollection, the evening before she died and looked into her room and found her "lying in a state of coma." The other inquired about her condition over the telephone shortly after nine o'clock in the forenoon of August 16, and was informed by the nurse that Miss Cunningham was seriously ill and was unconscious. Countervailing testimony was given by a large number of witnesses. The attending physician who called about 8:30 A. M. the same day, the three witnesses who signed the instrument and fifty-four friends and neighbors, many of whom had often met Miss Cunningham in the spring and summer of 1926, and had seen her within a few days of her death, expressed the opinion that she was of sound mind and competent to make a will. The record discloses ample evidence of Miss Cunningham's gratitude toward Louise Gibson, her cousin, for services the latter had rendered her in prior years, and of the former's declared purpose, often repeated through a long period of time, to leave her property to the cousin who had so loyally served her. The evidence concerning mental capacity clearly supports the verdict.

The decree of the circuit court is affirmed.

*Decree affirmed.*