*In re* McINTYRE ESTATE.

1. Appeal and Error—Questions Reviewable—Conduct of Will
   Contest—Objections.
   Question as to whether or not miscarriage of justice resulted
   from the manner in which jury trial in will contest was
   conducted by virtue of trial court's bolstering the testimony
   of proponents' witnesses and depreciating the testimony of
   contestants' witnesses and abandoning his judicial impartiality
   might well not be considered on appeal, where no objections
   were made to the trial court.

2. Wills—Witnesses—Judges.
   Record in will contest *held*, to show that the trial court had not
   bolstered the proponents' witnesses or depreciated the con-
   testants' witnesses, but had conducted the trial in a fair,
   impartial and judicial manner.

3. Same—Execution—Evidence—Subscribing Witnesses.
   Evidence that contested will was properly executed *held*, suf-
   ficient, even though testator's name did not appear at the

---

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error § 246 *et seq.*
[2] 3 Am Jur, Appeal and Error § 1053 *et seq.*
[3] 57 Am Jur, Wills § 252.
   Manner of signing as affecting sufficiency of signature of testator.
   31 ALR 682, 42 ALR 954, and 114 ALR 1110.
[4] 57 Am Jur, Wills § 91 *et seq.*
   Necessity of affirmative evidence of testamentary capacity to
   make prima facie case in will contest. 110 ALR 675.
[5] 57 Am Jur, Wills §§ 854, 855.
   Prima facie case for proponent in will contest as shifting burden
   of proof. 76 ALR 373.
[7] 57 Am Jur, Wills § 453.
[8] 57 Am Jur, Wills § 349 *et seq.*
[9, 10] 57 Am Jur, Wills §§ 386, 387.
   Presumptions and burden of proof as to undue influence on testator.
   66 ALR 228, 154 ALR 583.
[11] 57 Am Jur, Wills §§ 438, 445.
[13, 14] 53 Am Jur, Trial §§ 668 *et seq.*, 775 *et seq.*

end of will, where fact that testator had put his "X" on the will was shown by the testimony of the attorney-scrivener, his secretary, and supervisor of convalescent home, the subscribing witnesses to the will; hence, in the absence of any testimony to the contrary the issue of execution of the will was properly withdrawn from the jury (CL 1948, § 702.5).

4. SAME—INSTRUCTIONS—MENTAL COMPETENCY.

Instruction to jury in will contest relative to law's favorable attitude as to making of a will and emphasizing its inviolability and that testator was presumed mentally competent *held,* not improper, when the whole charge is read together.

5. SAME—BURDEN OF PROOF—EXECUTION—OBJECTIONS.

Proponents of a will have the burden of proving the proper execution of a will and when that is done the burden then shifts to the contestants to prove by a preponderance of the evidence that the will should not be admitted to probate for some one or more reasons enumerated in the objections filed.

6. SAME—INSTRUCTIONS—PRESUMPTION OF MENTAL COMPETENCY.

Trial court's repetition of presumption of mental competency in conclusion of rather lengthy charge in will contest, although somewhat repetitious, *held,* not prejudicial, where it was a correct statement of the law and was a summation with reference to the case.

7. SAME—FRAUD—UNDUE INFLUENCE—EVIDENCE.

The question of fraud and undue influence were properly not submitted to the jury in a will contest, where record does not contain any evidence from which a jury could infer that the testator was unduly influenced or that proponents made a misrepresentation to testator for the purpose of influencing the disposition he made of his property.

8. SAME—UNDUE INFLUENCE.

Undue influence exercised upon one who executes a will may vitiate it if that influence took from the testator his right freely to exercise his discretion in disposing of his property.

9. SAME—UNDUE INFLUENCE—EVIDENCE—OPPORTUNITY.

Undue influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person to influence the testator nor in the fact that the opportunity existed for the exercise of such influence.

10. Same—Undue Influence.

Undue influence, exercised in connection with the will and not with other things, must be proved by party contesting its validity on that ground.

11. Same—Undue Influence—Disposition of Property—Statutes of Descent.

Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent.

12. Same—Misrepresentations—Undue Influence.

Misrepresentations made for the purpose of influencing the testator may constitute undue influence, if it is shown that the testator relied upon such misrepresentations in the disposition of his property.

13. Trial—Instructions—Discretion of Court—Comment on Evidence—Witnesses.

It is incumbent upon the trial court to instruct the jury as to the law applicable to a case whenever a verdict is to be rendered and he has a wide discretion in commenting on the evidence, the testimony and the character of the witnesses as in his opinion the interests of justice may require (Court Rule No 37, § 9 [1945]).

14. Same—Will Contest—Comment on Witnesses—Interest.

Comment of the trial court as to jury's right to consider the interest of contestant heirs in weighing the credence and credibility of their testimony in will contest, when taken in connection with later part of charge, held, not prejudicial, especially in view of the fact he did not name or identify them.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted October 14, 1958. (Docket No. 44, Calendar No. 47,445.) Decided January 12, 1959.

In the matter of the estate of George Earl McIntyre. Contest upon admission of will was entered by William O. McIntyre and others. Verdict and judgment admitting will to probate. Contestants appeal. Affirmed.

*John W. Shepherd,* for proponents.

*Livingston, McDonald & Anderson,* for contest-. ants.

Kavanagh, J.   This will contest, which was certified to the circuit court, resulted in a jury verdict for proponents.   Objections to the probate of the will were filed by William O. McIntyre of Newaygo, Hiram Ernest McIntyre of Grand Rapids, and Gracie Belle Reynolds of Seattle, Washington.   The contestants were brothers and a sister of decedent, all of his heirs-at-law, except a half sister, Bessie Hatch McCollum, of Gardiner, Oregon.

The contestants objected to the admission of the will of the deceased, executed December 10, 1953, and claimed that it was not properly executed, that there was undue influence and deceit, and that decedent was not mentally competent to make a will.   The trial judge withdrew all issues except mental competency from the jury.   The jury returned a verdict for proponents.   A judgment was entered, and a motion for new trial, filed by contestants, was denied. This appeal is taken.

Appellants contend:   (1) that the trial court erred in bolstering the testimony of proponents' witnesses, and depreciating the testimony of contestants' witnesses, and abandoning his judicial impartiality; (2) that the trial court erred in withdrawing from the jury the question as to whether or not the will had been executed in accordance with the statutory requirements when the decedent executed the will with a "X" without his name being written in; (3) that the trial court erred in quoting from texts which had an argumentative effect in his instructions, and in repeatedly calling to the attention of the jury that the law looks with favor on the making of a will and its inviolability, without likewise calling atten-

tion to the concern of the law that a will executed
by a person mentally unable to make one should be
refused admission to probate; (4) that the trial court
erred in instructing the jury in effect that the pre-
sumption of mental competency followed through in
the case, except as the jury determined otherwise;
(5) that the trial court erred in not submitting the
question of undue influence to the jury; and (6) that
the trial court erred in affirmatively and argumenta-
tively specifically pointing out in his instructions
that the interest of the contestants be taken into con-
sideration in weighing the credence and credibility
of their testimony.

McIntyre at the time of his death, March 29, 1954,
was 78 years of age. He left a last will and testa-
ment, executed on December 10, 1953, which in sub-
stance provided that after the payment of expenses,
$5,000 was to go to the Masonic Home, $20,000 to
the Shriner's Hospital for Crippled Children, $1,000
each to the decedent's 2 brothers, his sister and half
sister, and the residue up to $500 each was to be
equally divided among decedent's nephews and
nieces. The will also contained a separate paragraph
setting forth decedent's assets, and another separate
paragraph naming and giving the addresses of the
brothers and sisters, and each of the 15 nephews and
nieces who were remembered in the will.

In October, 1953, the deceased sought the services
of the county prosecutor of Newaygo county, Mr.
Russell Shepherd, in connection with preparing his
will. Mr. Shepherd took his secretary with him and
visited decedent in the supervisor's office of the con-
valescent home, near Newaygo, Michigan, where de-
cedent was staying.

Mr. Shepherd testified that at the first meeting the
decedent advised him of the extent of his assets, the
names and addresses of his brothers, sister, and
half sister, and expressed the desire to the scrivener

and his secretary to leave the sum of $20,000 to the Shriner's Hospital for Crippled Children and $5,000 to the Masonic Home at Alma, Michigan. Scrivener then relates that they talked about decedent's brothers and sisters and decedent's intent to disinherit them. Decedent also spoke about his nephews and nieces and was undecided as to whether he was going to leave them anything or not. Either at that meeting or at a later October meeting, the decedent decided to leave his brothers and sisters $1,000 and his nephews and nieces the residue, not to exceed $500. Scrivener made certain investigations in order to obtain the necessary information to properly prepare the legacies. On December 10, 1953, he and his secretary again returned to the convalescent home where they found decedent in bed. Scrivener read the will to testator and testator pointed out, according to scrivener and his secretary, that he thought 2 names of nephews had been omitted. Decedent, according to their testimony, supplied these names. Scrivener inserted the names in ink. Decedent, with scrivener's assistance, then marked the will with a "X," both at the places where the insertion of names had been made and on the signature line above his name. Scrivener, Russell Shepherd, Emma DeLong, his secretary, and Juanita Ward, supervisor of the home, witnessed the will. The words "his mark" were inserted by scrivener.

At the trial of the cause, scrivener, his secretary, Emma DeLong, Juanita Ward, and Dr. Lambert J. Geerlings, the physician who had cared for decedent from July, 1953, until his death, and the county welfare director, all testified that decedent was, in their opinion, competent to make a will. The first 3 testified as to the facts surrounding the preparation and execution of the will.

The witnesses for contestants as to decedent's mental incompetency were George McIntyre, a

nephew of decedent, Gracie Belle Reynolds, sister, John McIntyre, nephew, Myrtle McIntyre, sister-in-law, William O. McIntyre, brother, Charles William Martin, a minister who visited him, Clarence McIntyre, nephew, and Dr. G. J. Stuart, a psychiatrist. Each testified substantially that in their opinion decedent was weak of body and was not mentally competent to make a will, with the exception of Dr. G. J. Stuart, who on answer to a hypothetical question, concluded that the decedent was suffering from senile dementia.

It is apparently admitted by contestants that the evidence was sufficient to go to the jury. Their first allegation of error, that a miscarriage of justice resulted from the manner in which the trial was conducted, is based on the allegation that the court committed error by bolstering the testimony of proponents' witnesses, depreciating the testimony of contestants' witnesses, and abandoning his judicial impartiality.

It is to be pointed out with respect to all of these allegations of error that no objections were made to the trial court. For that reason this Court might well say that it will not consider them on appeal as grounds for reversal. However, a careful reading of the record will disclose that no such judicial partiality existed. It would appear that the court, with considerable patience, particularly with reference to Rev. Martin and Dr. Stuart, attempted to give contestants every opportunity, in some instances far beyond reason, to present their case. Appellants complain with reference to the court's remark to Rev. Martin where the court said: "Why are you so anxious to contribute so much to this in your answers?" For some period of time the court had been trying to get the witness to answer the questions and not inject his extraneous ideas into his responses. This was the duty of the court in order

to properly conduct the case so as to present to the jury an unbiased picture. It would appear that the court's patience was taxed by his inability to get the witness to follow directions. However, certainly no prejudicial error was committed. The allegations with reference to Dr. Stuart are equally untenable and do not call for any further discussion from this Court. Suffice it to say that the record does not disclose any error based on alleged bolstering of the testimony of proponents' witnesses and alleged depreciating of the testimony of contestants' witnesses. The learned trial judge conducted the trial in a fair, impartial, and judicial manner.

As to the second error alleged, that of withdrawing from the jury the question as to whether or not the will had been executed in accordance with the statutory requirements when the decedent executed the will with a "X" without his name being written in, 3 witnesses testified that decedent placed his "X" on the will.

In the case cited by contestants, *In re Canterbury's Estate,* 198 Mich 743, the Court cited CL 1915, § 11821, which in substance is similar to our present statute,* and then said (p 745):

"In *McGinnis* v. *Kempsey,* 27 Mich 363, 375, this Court said:

" 'It is sufficient if it be by a cross or other mark by the testator as and for his signature.'

"In *Just* v. *Township of Wise,* 42 Mich 573 (syllabus), it was said:

" 'Where one who cannot write directs another person to sign for him, and the latter signs in his presence, the signature is binding whether the former does or does not attach his mark.'

"In the absence of any testimony to the contrary, we are of opinion that the evidence offered on behalf of the proponent should be construed as an express·

---

* CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]).—Reporter.

direction from the testatrix to Smedley, the scrivener, to sign her name. We have no hesitation in reaching the conclusion that a will executed by a testator who can write by affixing his mark, his signature having been written by another at his direction, is as validly executed as if he himself had written his signature with his own hand."

114 ALR 1110 states the rule with reference to the execution of a will which is signed by the testator's mark:

"The rule, stated in the prior annotation [31 ALR 682, 42 ALR 954], that a statute requiring a will to be signed or subscribed by the testator is satisfied if the signature is made by the testator's mark, is supported by the following later cases:

"Florida.—*Ziegler* v. *Brown* (1933), 112 Fla 421 (150 So 608).

"Illinois.—*Cunningham* v. *Hallyburton* (1930), 342 Ill 442 (174 NE 550).

"Louisiana.—*Gauthreaux's Succession* (1932), 173 La 993 (139 So 322).

"New York.—*In re Stegman* (1929), 133 Misc 745 (234 NYS 239) (affirmed without opinion in (1929), 227 App Div 647 [235 NYS 890]).

"Pennsylvania.—See cases under heading –'Pennsylvania rule,' *infra*.

"Texas.—*Short* v. *Short* (1933; Tex Civ App), 67 SW2d 425; *Franklin* v. *Martin* (1934; Tex Civ App), 73 SW2d 919; *Saathoff* v. *Saathoff* (1937; Tex Civ App), 101 SW2d 910; *Mortgage Bond Corp.* v. *Haney* (1937; Tex Civ App), 105 SW2d 488.

"Wisconsin.—*In re Wilcox* (1934), 215 Wis 341 (254 NW 529).

"England.—See, also, *Finn's Estate* (1935), 52 Times LR 153, *infra* (thumbmark).

"Ireland.—*In re Kieran*, [1933] Ir R 222.

"Newfoundland.—*In re Walsh* (1893), Newfoundl. Rep [1884–1896] 738.

"In *Cunningham* v. *Hallyburton* (1930), 342 Ill 442 (174 NE 550), under a statutory requirement that

a will be signed by the testator or by some other person in his presence and by his direction, a signature by mark was held to be an effective signature, without the name of the testator appearing on the paper; in other words, a mark, standing alone, without the testator's name, or the words 'his mark,' or their equivalent, being attached thereto, in a will where the testator's name did not even appear on its face was held sufficient."

It would appear that the testimony of the 3 witnesses left no question about the execution of the instrument so far as the mark is concerned. The court properly withdrew the matter from the consideration of the jury in the absence of any testimony to the contrary.

The third allegation of error that the trial court erred in quoting from texts which had an argumentative effect, and in repeatedly calling to the attention of the jury that the law looks with favor upon the making of a will and emphasizing its inviolability, isolated from the rest of the charge, might leave one with the impression that there was basis for complaint in this regard. Reading the whole charge together there can be no question but that it was an informative one so far as the jury was concerned, and fairly and clearly presented the questions of law involved and the theory of the proponents and the contestants in the case. No undue influence is indicated by repetition or otherwise. We find no such grounds for criticism or reversal in this case. Both theories were fairly and clearly presented. The same can be said with respect to the allegation of error in the instruction on the presumption of mental competency. The court properly instructed the jury that the burden of proof is on the proponents to prove the proper execution of the will, and, having done so, the burden of proof then shifts to the contestants to prove by a preponderance of the evidence

that the will should not be admitted to probate for some one or more of the reasons enumerated in the objections they have filed.

Near the end of a rather lengthy charge, the court, in conclusion, did repeat the charge with respect to the presumption of mental competency, and, further carrying out that charge, repeated that it was the burden of contestants to establish such incompetency by a preponderance of the evidence. Although it may have been somewhat repetitious, it constituted a summation with reference to the case and was a correct statement of the law and, therefore, certainly not prejudicial to the rights of contestants.

Insofar as the allegation of error that the trial court erred in not submitting the question of undue influence to the jury, this record does not contain any evidence from which a jury could infer that the testator was unduly influenced.

In *In re Sprenger's Estate*, 337 Mich 514, 521–523, this Court said:

" 'Undue influence' exercised upon one who executes a will may become the basis for finding the will invalid if that influence took from the testator his right to freely exercise his discretion in disposing of his property. Such influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person or persons to influence the testator nor in the fact that the opportunity existed for the exercise of such influence. It exists as a matter of law only where the influence is actually exerted and amounts to a constraint depriving the testator of his free agency.

" ' "Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be proved and in connection with the will and

not with other things. A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases. *Maynard* v. *Vinton,* 59 Mich 139 (60 Am Rep 276).   *   *   *

" ' "Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent." ' *In re Reed's Estate,* 273 Mich 334, 344, 346, as quoted with approval in *Re Hannan's Estate,* 315 Mich 102, 124.

"Misrepresentation made for the purpose of influencing the testator may constitute undue influence if it is shown that the testator relied upon such misrepresentations in the disposition of his property. *In re Barth's Estate,* 298 Mich 388."

It is incumbent on contestants to offer proofs from which legitimate inferences of fraud or undue influence might properly be drawn. On their failure to do this, no jury question is presented. In this case no proofs were offered or tendered from which a jury might make any legitimate inferences. *In re Johnson's Estate,* 326 Mich 310. No error was committed by the court in this case as a result of taking the question of undue influence away from the jury.

The last error charged is that the trial judge, in specifically pointing out in his instructions that the

interest of the contestants might be taken into consideration in weighing the credence and credibility of their testimony, singled out the contestants, and, in effect, instructed the jury that their testimony should be scrutinized with particular care. The charge in this respect was not unusual and was proper under the circumstances.

The rule is stated in 88 CJS, Trial, § 315, p 836 as follows:

"Where there is evidence which would warrant the giving of the instruction, the court should instruct the jury on the credibility of the testimony of an interested witness, and error in refusing such an instruction is not cured by a general instruction that the jury are the judges of the credibility of the witnesses and the weight to be given to the testimony of each. In giving an instruction on the credibility of interested witnesses the court should not single out any particular witnesses, but should instruct the jury as to who are interested witnesses."

Michigan Court Rule No 37, § 9 (1945), also covers this point:

"The court shall instruct the jury as to the law applicable to the case whenever a verdict is to be rendered, and in his charge may make such comment on the evidence, the testimony and the character of the witnesses as in his opinion the interests of justice may require."

The comment of the trial judge as to the jury's right to consider the interest of testifying heirs in weighing the credence and credibility of their testimony, without naming or identifying them, certainly could not be prejudicial, especially when considered with the following later part of the instruction:

"For your assistance in deciding this issue several witnesses have been produced. Opinions have been given by many of these witnesses and they

are not all in accord with each other. You and you alone are the sole judges of the credibility of each and every witness who has testified in this case. You have had the opportunity to see them on the stand, to judge of their candor or want of candor in testifying, their knowledge or lack of knowledge concerning the matters about which their testimony has been given, their interest or lack of interest in the issues presented. You have no right for light or trivial reasons to find that any one of the witnesses has intentionally testified falsely. It is always the duty of the jury to try to reconcile the testimony upon the theory that each and every witness has tried to tell the truth; but if you are not able to reconcile it upon that theory, you will then determine what testimony you believe is true and that which you believe is untrue and base your verdict upon that testimony which under all the facts and circumstances you believe to be true."

The old cases cited by the appellants have reference to trials prior to the adoption of Court Rule No 37, § 9 (1945), and are no longer applicable.

The verdict and judgment admitting the will to probate is affirmed. Proponents and appellees may tax costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.