9 Mich. App. 245 (1967)
156 N.W.2d 631
In re WILLEY ESTATE.
PARTRIDGE
v.
WILLEY.
Docket No. 1,978.
Michigan Court of Appeals.
Decided December 8, 1967.
Rehearing denied January 19, 1968.
*248 Charles B. Gatesman and Joseph C. Cox, for proponents.
Evans, Boyer & Luptak (Basil M. Briggs, of counsel), for contestants.
BAUM, J.
This is a will contest. Wanda Partridge, the proponent of the will, is the daughter of the testatrix, Hazel Willey. Among the contestants are certain grandchildren of the testatrix. They are the offspring of the testatrix's son, Fay Henry Willey, Jr., who died in her lifetime. His wife is also a contestant. The remaining contestants are the trustees, named in the will of the husband of testatrix, and the executor of the estate of Fay Henry Willey, Jr. The testatrix's husband also predeceased her. His will gave the testatrix a general power of appointment over the corpus of a trust created out of his estate. She was the income beneficiary of this trust during her lifetime. Pursuant to its terms, this power of appointment could be exercised by Hazel Willey in her last will.
The contestants argue that testatrix did not intend by her will to exercise the power of appointment. They also claim that Wanda Partridge, the chief beneficiary of the will, unduly influenced the testatrix.
The contestants failed below. On appeal they raise two broad issues. First, they contend that the trial judge erred in withholding from the jury *249 the question of whether the testatrix intended by her will to exercise the power of appointment. Second, they insist that the trial judge erred in instructing the jury with respect to their claim of undue influence.
The appellants' first claim of error is untenable. The will contains the following provision:
"I, Hazel M. Willey * * * for the purpose of making disposition upon my death of my entire estate, real, personal and mixed, and any estate which I may have power to dispose of * * * do hereby * * * declare this to be my last will and testament." (Emphasis added.)
After making certain specific bequests and devises, the will goes on to say:
"I give, devise and bequeath the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate to which I may be entitled or which I may own and any estate which I may have the power to dispose of at my death to my daughter, Wanda." (Emphasis added.)
On their face, these two clauses are clear and unambiguous. They manifest an intention to exercise all the dispositive power which the testatrix had. Patently, they extend to and exercise the power of appointment left to her by her late husband.
The evidence in this case did not develop any latent ambiguity concerning the meaning of these clauses. Counsel for appellant on oral argument conceded that these clauses were neither patently nor latently ambiguous.
The authorities are overwhelming that when there is no patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language.
*250 The rule was announced as follows in Goembel v. Bonine (1953), 336 Mich 73, 76:
"`Interpretation of a will ends by consulting the document if its terms are clear and unambiguous, but if they are not, the uncertain words and phrases used are weighed and interpreted in the light of pertinent surrounding facts and circumstances which may tend to indicate what the testator had in mind at the time he used them.'"
In In re Farwell's Estate (1943), 306 Mich 208, 215, we find this expression:
"If there is no * * * ambiguity the plain terms of the will must stand."[1]
The plain language of Hazel Willey's last will demonstrates unequivocally an intention to exercise whatever power of appointment she may have had. Under such circumstances there is no question for the jury.
We turn now to the undue influence issue. Hazel Willey had three children. Two were daughters, Wanda and Geraldine. Her third child was a son, Fay Willey, Jr. Geraldine died, quite young, in Hazel Willey's lifetime. She had never married and had no children. The other daughter, Wanda, married and had three children. Wanda and her husband owned and operated a small ice cream parlor and country store in Brighton. They lived with their children in a home which was only a few feet from Hazel Willey's home. Being in such close proximity, Wanda and her family had an unusually close relationship with the testatrix. Wanda and her family cared for Hazel Willey in her last illness. Wanda's oldest child, Nancy, was particularly *251 helpful in connection with her grandmother's outpatient treatment at a hospital in Ann Arbor. As Hazel Willey became debilitated from cancer, Wanda took over the management of her business and affairs. For this purpose Wanda had a general power of attorney from her mother.
Hazel Willey's son married and had four children. He and his family lived approximately 50 miles from the testatrix, but they visited her frequently. The relationship between testatrix and Fay and his family was very good. Her relationship with her son's family continued to be good after his death.
Fay Willey, Jr., during his lifetime worked in a business which his father had started and developed. This family business was eventually absorbed by the Ex-Cell-O Corporation. After his father's death, Fay remained an executive employee of the Ex-Cell-O Corporation. He appears to have prospered, and upon his death he left an estate of over $300,000 to his widow and children. He died unexpectedly of a stroke during Hazel's lifetime. His death occurred about 6 weeks before his mother signed the will in question. His mother's death followed his by only four months.
In 1950 Hazel Willey's husband, by will, left approximately one half his estate for Hazel in the trust described earlier, with a general, testamentary power to her to dispose of the corpus. The rest of his estate was divided equally among his children, either outright, or in trust for their benefit. Upon the death of Geraldine in 1956, her share was divided equally between Wanda and Fay, Jr. The will of the elder Fay Willey provided that if his wife failed to exercise her power of appointment, the corpus of her trust was to go equally to his children. Thus the senior Fay Willey's plan for *252 disposing of his estate called for equal treatment of his children.
Hazel Willey did not follow such a plan in her will. Her will left her home to Nancy Partridge, one of Wanda's three daughters. Wanda's remaining children were not mentioned in the will. The will left 25 shares of Ex-Cell-O common stock or the cash equivalent to each of the four children of Fay, Jr. All the rest and residue of her estate was given to Wanda. The stock which was bequeathed to the four children of testatrix's deceased son was worth approximately $1,000. The home which testatrix devised to Nancy Partridge was worth something less than $25,000. The property bequeathed to Wanda under the residuary clause had a value of over $415,000.
In December of 1964, when she executed the will, Hazel Willey was of sound mind, but was bedridden with cancer in a terminal stage. She was about 65 years old at the time. She died some 3 months after signing the will.
The lawyer who drafted the will was engaged by Wanda Partridge. Before doing so, she had telephoned a lawyer, in Detroit, for such purpose. He had handled her mother's affairs in the past. She called the Detroit lawyer at her mother's request. Wanda testified that her mother became dissatisfied by what appeared to be delay on the part of the Detroit attorney and that her mother asked Wanda to engage another lawyer to prepare a will, leaving the selection to Wanda. Wanda testified that thereafter she called the Brighton lawyer, who ultimately drafted the will, and engaged him on her mother's behalf.
Wanda admitted discussing with him the provisions of her mother's will. She testified however that she only related to him what her mother had said she wanted in the will. The lawyer, who prepared *253 the will, testified that before he drafted the will, he discussed very fully and privately with the testatrix what she wanted in it. He testified that just before the will was executed, he went over the provisions of the will with the testatrix, privately. The tenor of his testimony was that the will reflected the free and uncoerced wishes and desires of the testatrix. Wanda gave like testimony. There was virtually no direct evidence of undue influence.
There is some evidence that Wanda did not get along well with her brother, Fay. One might conjecture that Wanda sought to influence her mother against his family. On the other hand, there was some evidence that the testatrix felt that the family of Fay, Jr., was well provided for by him upon his death. This, along with the great assistance which Wanda gave her mother, and the modest circumstances of Wanda's family, would tend to explain why Hazel Willey left so much to Wanda and so little to the family of Fay, Jr.
The appellants urge that the trial court erred in refusing to charge the jury as requested in their fourth and eighth requests and in giving legally erroneous instructions to the jury on the subjects covered by these requests. Contestants' fourth request is in pertinent part as follows:
"I instruct you that undue influence is the conduct by which the wishes and desires of another person are substituted for those of the person who executed a will. * * * [The objectors] are saying that this undue influence caused Mrs. Willey to do something that she did not desire to do. In order to prove undue influence here, it was not necessary for the objectors to the will to show actual instances of undue influence exercised by Wanda Partridge upon her mother. Undue influence is usually proven by circumstantial evidence. You should take into account all the testimony that you *254 have heard and decide whether or not this claimed will contains solely the wishes and desires of Hazel Willey. In evaluating that testimony, you should take into account certain factors which tend to prove the existence of undue influence. Those factors are:
"(a) If the will is an unnatural will, that is, if it cuts off heirs-at-law or unduly benefits the beneficiary.
"(b) If the will differs from the intentions of the person whose will it purports to be.
"(c) If there was an opportunity for the one accused of exerting undue influence to exert such influence and substitute her desires for the will of the testatrix.
"(d) If the one accused of using undue influence was active in obtaining the attorney who drafted the alleged will and that person also conveyed to the attorney directions for drafting the alleged will. In addition, in this connection, you may take into account the use or failure to use by the testatrix of the particular attorney who drew the alleged will for other matters and the consistent use by her of another attorney for other matters."
There was no error in refusing to give this charge because it is not a fair, balanced, and correct statement of the law. Landon v. Shepherd (1958), 353 Mich 500, 508; Mullaney v. Woodruff (1937), 280 Mich 66, 70, 71. In the first place, the definition of undue influence contained in the requested instruction is entirely too mild and innocuous in tone.
Undue influence is the overpowering of the volition of the testator by another person whereby what purports to be the testator's will is in reality the will of the other person. In re Spillette Estate (1958), 352 Mich 12, 17, 18. While there need be no violence or threat of physical force, there must be unreasonable pressure upon the mind of the testator, *255 amounting to psychological or moral coercion, compulsion, or constraint, so great that his free agency is destroyed and the volition of the person applying the pressure is substituted. In re Langlois Estate (1960), 361 Mich 646; In re Sprenger's Estate (1953), 337 Mich 514, 522.[2] To be actionable, the unreasonable and improper pressure must result in a will which the testator would not otherwise have made. In re Hannan's Estate (1946), 315 Mich 102, 123. Such a testament does not represent the testator's true will at all, but, in reality, represents the will of the person who influenced him. In re Anderson Estate (1958), 353 Mich 169, 172, 173.
The appellants' fourth request ignores or understates the element of unreasonable pressure, constraint or coercion, which is necessary for influence to be characterized as "undue." The requested instruction overlooks the proposition that there can be "due" or "reasonable" influence which is not actionable.
"The facts may show that he [testator] was advised, persuaded, solicited, importuned or entreated, but, so long as he is not rendered incapable of acting finally upon his own motives and so long as he remains a free agent, his decision is his own and the action is his own and not that of another." In re Hoffman's Estate (1942), 300 Mich 406, 418.
"Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion." In re Reed's Estate (1935), 273 Mich 334, 344; In re Hannan's Estate, supra. *256 There was no error in declining to present to the jury the contestants' overly pallid version of undue influence.[3]
Another portion of the appellants' fourth request suggests to the jury that there is undue influence if the will does not contain "solely the wishes * * * of Hazel Willey." This could be misleading, since there is nothing necessarily wrong with a will which represents both the wishes of the testatrix and the wishes of a beneficiary, as long as the testatrix's free agency has not been overcome and supplanted. In re Hannan's Estate, supra; In re Reed's Estate, supra.
"`It is not enough that the testator's convictions be brought into harmony with that of another. * * * His views may be radically changed, but * * * so long as he remains a free agent, * * * the will is his will.'" In re Williams' Estate, supra.
A portion of the requested charge, describes as an "unnatural will", one which "cuts off heirs-at-law or unduly benefits the beneficiary." This characterization is highly dubious. In re Sprenger's Estate (1953), 337 Mich 514, 522, 528, 529; In re Cottrell's Estate (1926), 235 Mich 627, 631.
Thus, appellants were not entitled to have the judge instruct the jury in accordance with their fourth request.
They complain that the charge which was given did not permit the jury to find undue influence on the basis of circumstantial evidence, apart from evidence which tended to show a confidential or fiduciary relationship between Wanda and her mother.
The difficulty with this argument is that the appellants offered no such objection to the charge, *257 although an opportunity to object, outside the presence of the jury, was afforded by the trial judge, after the charge was completed, pursuant to GCR 1963, 516.2.[4]
We might point out that this is not a situation in which the requested instruction was a proper and lawful one, which the trial judge should have given. We make no comment, here, on the effect of a failure by a litigant, to make the selfsame point after the charge as he has already made in a well-founded request.
There is another difficulty with appellants' argument. Undoubtedly, circumstantial evidence may be relied on by contestants to show undue influence. In re Loree's Estate (1909), 158 Mich 372. However, to carry the question to the jury, such circumstantial evidence must be of considerable probative force and, quite clearly, must do more than raise a mere suspicion. In re Langlois Estate, supra; In re Spillette Estate, supra; In re Fay's Estate, supra; In re Williams' Estate, supra. It is debatable in this case whether the circumstantial evidence of undue influence, apart from evidence related to fiduciary relationship, was sufficient to take the case to the jury. The trial judge concluded that, apart from the presumption of undue influence which would arise if Wanda were in a relationship of trust and confidence with her mother, the evidence, circumstantial and direct, showed at most an opportunity to exercise undue influence.
Evidence merely showing an opportunity to exercise undue influence is not enough to take the case to the jury. In re Spinner's Estate (1929), 248 Mich 263. There is not even enough to present the *258 issue of undue influence to the jury when the evidence shows, without more, an opportunity coupled with a desire to exercise influence, plus an unequal disposition by will incongruent with the laws of intestate succession. In re McIntyre Estate (1959), 355 Mich 238.
Admittedly, the line between evidence which merely raises a suspicion and evidence which would support a fair inference of undue influence is not an easy one to draw. The trial judge placed the circumstantial evidence in this case in the first category, except for that which tended to show a fiduciary relationship. We are inclined to agree with the trial judge's view of the evidence.[5] Admittedly, the point is arguable. We need not dwell on the matter, however, because, by failing to object to the charge, appellants lost the right to claim error in the charge on appeal, GCR 1963, 516.2.
The appellants argue that the trial judge erred in refusing to grant appellants' eighth request to charge and that the charge which was given on the subject was erroneous. The eighth request to charge dealt with the proponent's burden of rebutting the presumption of undue influence which would arise if a relationship of trust and confidence between Wanda and her mother were established by the contestants' proofs.
In this connection, the appellants' request would have had the judge instruct the jury that:
"The preponderance of the evidence must show that the bequest to Wanda Partridge of Hazel Willey's *259 residuary estate, including the trust estate created under her husband's will, was solely the result of Hazel Willey's full knowledge, full understanding and free will."
The requested instruction goes on to charge the jury in terms of the scales of justice, metaphorically weighing the evidence favorable to the proponent on one scale; the opposing evidence on the other; and advises the jury to give the presumption weight on the contestants' side, if the evidence on the scales is equally balanced.
The requested charge included a subtle, indirect attempt to submit to the jury the question of whether testatrix intended to exercise the power of appointment. This was the effect of the language requiring a showing by the preponderance of the evidence that the residuary bequest was "solely the result of Hazel Willey's full knowledge, full understanding and free will." On the issue of undue influence her free will was highly relevant. But the reference to "full knowledge" and "full understanding," in connection with the bequest of "the trust estate" was an attempt to get to the jury, indirectly, the issue which the judge quite properly withheld from the jury: whether Hazel Willey intended by the residuary clause to dispose of the trust property over which she enjoyed a power of appointment.
Moreover, there inhered in the language, concerning "full knowledge" and "full understanding" of the testatrix, the danger of leading the jury to deliberate on such issues as testamentary capacity and mistake  issues not properly in the case at all.
The judge was not required to discuss the burden of overcoming a presumption of undue influence in terms of the scales of justice. Britten v. Updyke (1959), 357 Mich 466, 473. His charge on this subject, *260 albeit in different language than the request, was not different in substance. Henning v. Riegler Water Well Drilling, Inc. (1960), 360 Mich 288.
For these reasons, the trial court was not required to instruct the jury in accordance with either the substance or the language of the appellants' eighth request. Landon v. Shepherd, supra.
Appellants complain that it was error for the judge to instruct the jury that certain conduct on the part of Wanda did not amount to undue influence without going on to say that such conduct could be taken into account by the jury with all the other evidence in the case in determining whether or not undue influence had been used.
However, we are confronted by the same situation we discussed respecting the appellants' fourth request. The trial judge was not required by law to give instruction number 8, substantially as requested, and no objection was made to the instruction actually given on the subject. After the charge, appellants were silent, although an opportunity to object out of the jury's presence was afforded, pursuant to GCR 1963, 516.2. The failure of the appellants to make timely objection removed the possibility of the judge's correcting errors in the charge. This is true with respect to the subject matter covered by the fourth request as well. It would be unfair to allow one party to withhold objection and to present it for the first time on appeal. Hunt v. Deming (1965), 375 Mich 581; Johnson v. Narmore (1966), 378 Mich 491. We are not unmindful of the statement in Hunt v. Deming that "in unusual circumstances, and to prevent manifest injustice," an appellate court may take note of errors in instructions "with respect to basic and controlling issues * * * even though objection thereto was not made before the jury retired."
*261 We note, however, that this observation in Hunt v. Deming seems to suggest to appellate courts that they should exercise such discretion "sparingly" and under "unusual circumstances," for "to do otherwise would be to encourage counsel to maintain silence in the face of correctable erroneous instructions, hoarding their objections for use in the event of an unfavorable * * * verdict."
We see nothing so unusual in the circumstances of this case as to warrant departure from the express provisions of GCR 1963, 516.2. Moreover, in this case we do not see that any manifest injustice has occurred. We say this because the evidence of undue influence is so thin that even if the issues were meticulously submitted to the jury in a letter-perfect charge, it is unlikely that the result in this case would be different.
For these reasons the judgment below is affirmed, with costs to the appellees.
LESINSKI, C.J., and QUINN, J., concurred.
NOTES
[1] For similar formulations of the rule see Morrow v. Detroit Trust Company (1951), 330 Mich 635, 643; In re McLennan's Estate (1914), 179 Mich 595, 601.
[2] Accord: In re Hoffman's Estate (1942), 300 Mich 406, 417, 418; In re Reed's Estate (1935), 273 Mich 334, 344; In re Fay's Estate (1917), 197 Mich 675, 686, 687.
[3] See the discussion of pressure and constraint in In re Williams' Estate (1915), 185 Mich 97, 118.
[4] "Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
[5] The following decisions seem to support the trial judge's view: In re Langlois Estate (1960), 361 Mich 646; In re McIntyre Estate (1959), 355 Mich 238; In re Anderson Estate (1958), 353 Mich 169; In re Spillette Estate (1958), 352 Mich 12; In re Vreeland's Estate (1948), 323 Mich 316; In re Hayes' Estate (1931), 255 Mich 338; Hoagland v. Reedy (1927), 237 Mich 691; In re Cottrell's Estate (1926), 235 Mich 627; In re Fay's Estate (1917), 197 Mich 675; In re Williams' Estate (1915), 185 Mich 97.